# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00856-CV

---

### WC 4th and Colorado, LP and WC 4th and Colorado GP, LLC, Appellants

### v.

### JAC Entertainment, Appellee

---

**FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY**
**NO. C-1-CV-15-009352, THE HONORABLE ERIC SHEPPERD, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

In this commercial landlord-tenant dispute, the tenant, JAC Entertainment (JAC), prevailed on its claims for breach of contract, declaratory judgment, damages, and attorney's fees. The landlords, WC 4th and Colorado, LP and WC 4th and Colorado GP, LLC (collectively, WC), complain on appeal that the evidence was legally insufficient to support the trial court's award of damages and that, therefore, JAC was not entitled to attorney's fees because it was not a prevailing party. We will affirm the judgment.

### BACKGROUND[1]

JAC and WC have operated under a commercial lease regarding certain premises in downtown Austin for several years. The original lease is a five-year term with JAC having the

---

[1] The facts in this section derive from JAC's live petition.

option to renew the lease twice. In addition to monthly base rent of $15,000, the lease requires JAC to pay monthly its pro rata share of "CAM Charges," defined as "the reasonable cost of ownership, operation, and maintenance of the Common Areas." The lease defines "Common Areas" as "all facilities and areas of the Building that are intended and designated by Landlord from time to time for the common, general, and nonexclusive use of all tenants of the Building, including parking lots." The lease sets the initial monthly CAM Charge at $0.

During the lease's first term, WC began charging JAC CAM Charges in the monthly amount of $976.53. A dispute arose between the parties when WC increased the CAM Charges to $1,605 per month. In response to JAC's request for documentation supporting the charges, WC furnished JAC with ledgers. After inspection, JAC refused to pay any further CAM Charges, alleging that they were unauthorized by the lease because they constituted JAC's pro-rated share of WC's total general, administrative, and operating expenses for the entire premises rather than just the common areas. When the parties were unable to resolve their dispute, JAC filed this lawsuit, making claims for breach of contract, declaratory judgment, and fraud and seeking damages and attorney's fees. WC answered and filed counterclaims for breach of contract and declaratory judgment.

WC filed no-evidence and traditional motions for summary judgment, arguing that JAC had no evidence to support any of its claims, JAC's fraud claim fails as a matter of law, JAC cannot recover attorney's fees against a limited liability company as a matter of law, WC was entitled to judgment that it had not breached the lease by collecting CAM Charges, and JAC was in breach by failing to make further CAM Charges payments. Shortly thereafter, JAC filed a motion for summary judgment in which it sought various declarations, including (1) it is not liable for "CAM Charges" that include costs associated with areas of the premises that are not

2

"Common Areas" as defined in the lease and (2) WC is in breach of the lease by collecting and attempting to collect expenses associated with the entire building as "CAM Charges." JAC attached evidence to its motion, including: affidavits, deposition excerpts, copies of the lease and amendments thereto, and ledgers depicting WC's calculation of CAM Charges. JAC's motion contended that WC had "billed operating expenses *for the entire building* as 'CAM Charges.'"

After a hearing, the trial court signed an order granting JAC partial summary judgment, denying WC's motion for summary judgment, and ordering—"pursuant to the Declaratory Judgments Act"—that

1. Under the terms of the Lease, Plaintiff may be assessed "CAM Charges" which only include reasonable cost of ownership, operation and maintenance of areas designated for the common, general, and nonexclusive use of all tenants of the Building (Common Areas). Plaintiff may not be charged for costs of ownership, operation and maintenance of areas which are not Common Areas as defined in the Lease, and which specifically does not apply to repairs to roof or foundation or to utilities.

2. Defendant's conduct collecting and attempting to collect expenses associated with the entire building as "CAM Charges" constitute breaches of the Lease.

3. The court overrules Defendants' objections and special exceptions to the affidavits and summary judgment evidence.

4. Plaintiff's claims for damages, attorney's fees and fraud are postponed until an evidentiary hearing is held to determine damages, attorney's fees and fraud.

Having adjudged liability, the trial court later conducted an evidentiary hearing on the remaining issues of damages and attorney's fees. The trial court's final judgment awarded

3

JAC $15,404.81 in damages on its breach-of-contract claim and $73,160.00 in attorney's fees. It also ordered that WC take nothing on its counterclaims and that JAC take nothing on its fraud claim.[2] WC appeals the final judgment's award of damages and attorney's fees but does not challenge the trial court's liability determination in its partial summary judgment that WC breached the lease by collecting or attempting to collect "CAM Charges" associated with expenses for the entire premises, nor does it appeal the take-nothing judgment on its counterclaims.

## DISCUSSION

In its first issue, WC contends that the evidence is legally insufficient to support the trial court's award of damages. In its contingent second issue, WC contends that if the damages award is reversed, JAC cannot be considered a "prevailing party" to support the award of attorney's fees under the contractual attorney's-fees provision and the award must, therefore, be reversed.

### *Evidentiary sufficiency of damages*

WC contends that there is legally insufficient evidence to support the trial court's award to JAC of $15,404.81 in damages. *See City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (noting that evidence is legally insufficient when there is complete absence of evidence of vital fact, court is barred from rules of law or evidence from giving weight to only evidence offered to prove vital fact, evidence offered to prove vital fact is no more than scintilla, or evidence conclusively establishes opposite of vital fact). After reviewing the record, we conclude that, while the evidence in support of JAC's damages is minimal, it nonetheless

---

[2] JAC filed a notice of nonsuit of its fraud claim the day of trial.

4

constitutes more than a scintilla and is, thus, legally sufficient. *See Rocor Int'l, Inc. v. National Union Fire Ins. Co. of Pittsburg, PA*, 77 S.W.3d 253, 262 (Tex. 2002) ("More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence."); *GATX Terminals Corp. v. Rylander*, 78 S.W.3d 630, (Tex. App.—Austin 2002, no pet.) ("More than a scintilla exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable people to differ in their conclusions.").

After reviewing the summary-judgment evidence, the trial court determined in its partial summary judgment that WC was liable for breaching the contract by improperly collecting from JAC fees for the entire building under the guise of "CAM Charges." WC does not appeal this liability finding on appeal. Therefore, the only issue with respect to JAC's breach-of-contract claim remaining to be tried was the amount of damages and attorney's fees, if any, to which JAC was entitled because of WC's breach.

At the damages trial, JAC introduced five exhibits, all of which the trial court admitted without objection. Four of the five exhibits pertained to either attorney's fees or Rule 11 agreements irrelevant to damages, but one exhibit (No. 3) pertained to the damages that JAC alleged it suffered as a result of WC's improper collection of CAM Charges. Exhibit No. 3 was an email exchange dated March 7–8, 2018 between JAC's counsel and WC's counsel. Therein, WC's counsel stated, "I don't currently understand what you are claiming [as damages] - - does JAC have a calculation that it believes supports its position under the lease, or it is just attorney fees?" JAC's counsel replied, relevantly,

> **JAC paid approximately $16,000 in "CAM charges."** The parties' agreement was to either refund or assess further charges, depending upon what the outcome was. It is our position that we are entitled to the full $16,000 unless and until WC[] can prove what the expenses were for maintenance, etc. of exclusively the common areas. There is ample sworn testimony that WC[] is incapable of doing that. Finally, attorney's fees are the bulk of the damage testimony and proof.

(Emphasis added.) This email exchange—specifically JAC's counsel's statement that JAC paid approximately $16,000 in "CAM Charges"—constitutes at least a scintilla of evidence of the amount of JAC's damages caused by WC's breach of the lease by "collecting . . . expenses associated with the entire building as 'CAM Charges.'" WC did not object to this exhibit and did not introduce controverting evidence about the amount that JAC paid to WC as purported "CAM Charges." On this record, reasonable minds could conclude that the representation in Exhibit No. 3 by JAC's counsel about the CAM Charges that JAC paid is credible, considering the absence of an objection or controverting evidence. Therefore, the statement in Exhibit No. 3 by JAC's counsel that JAC paid "approximately $16,000" in CAM Charges constitutes legally sufficient evidence to support the trial court's judgment that JAC suffered damages of $15,404.81 for WC's breach by collecting fees unauthorized by the lease under the label of "CAM Charges." We overrule WC's first issue and need not, therefore, reach its contingent second issue.

## CONCLUSION

Because there was legally sufficient evidence to support the trial court's award of damages to JAC, we affirm the trial court's judgment.

_____

Thomas J. Baker, Justice


Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed:   October 1, 2019